172-3167 William Edmiston v. Ed Marshall Counsel, you may proceed. To the court, good morning. Mr. Storm, my name is James Brachy and I represent the plaintiff for the petitioner and his mayor, William Edmiston. Mr. Edmiston, as you know, is a broadcaster. He works in the most highly physical-demand job, probably in the construction business, where he's required to lift 100 pounds. Sometimes he can do 150 pounds. Now, my case is all about this videotape. It's been supplemented with the record and that's what that is. I believe that no rational trial can conclude that a person who does this kind of work cannot sustain a back injury on a repetitive basis. Is it your position, just to clarify, that the commission didn't consider the DVD or ignored it completely? Where's that coming from? Yes, sir. How do you draw that conclusion? It comes from, well, because that tape is dominant. And the way I would analogize it, Your Honor, is this. If the respondent had a tape of a guy who supposedly had a 20-pound weight restriction and there was video of him weightlifting, water skiing, climbing mountains, doing different things like that, and if that wasn't mentioned in the body of the decision, you would say the trial fact did not consider it. Why would we say that? We presume that they view all relevant information. Your Honor, you're absolutely correct. There is a presumption. But as you are aware, sir, in the commission's decision, the arbitrator specifically found that Petitioner presented no evidence on medical causation whatsoever. And listen, you win some, you lose some. But that doesn't mean that a trial fact willfully disregards evidence that's put in and not consider it. What evidence did he put in as a medical causation? So we know that this man has had prior chiropractic care in his life. Which, by the way, he denied on three occasions. But, Your Honor, again, you have to be able to put things into context. You have to remember it's no different than a major league pitcher who pitches six or seven innings and his shoulder has to get iced out. Does that man say, I'm injured, I want to go to the hospital? No. He puts some ice on it and he's going to be pitching in two or three days back and back on the line. Yeah, if he'd been icing it down every three weeks for six years, would you say that he should comment on it? Well, Your Honor, that's not what the facts show here. What the facts show is from 2005 until 2014, he saw a chiropractor about once. He saw a chiropractor, I don't know, ten times, maybe a dozen times, the last time being eight and one-half months prior to the date of the 14th of May. So this is not a man who's a walking time bomb. Again, if you look at that video, if you see what that man does, it's a wonder that any human being can do that type of work on a heavy or repetitive basis. In fact, that video is actually my report of what he was performing because as he testified, he was working on the bottom floors where he has to carry this rebar up an incline because they were working on ramps. Isn't the problem with the video that the burden is with you as there is a presumption to say that the commission didn't in fact consider it? Unless the commission says we didn't consider it, you're sort of stuck with it, aren't you? Well, no, because again, you have to look at things in the totality of the circumstances because, again, we know that this happens on a Thursday. He was able to drive home. These people are paid $50 an hour plus benefits. They don't take time off work. He calls them the next day and says, listen, my back is sore. I can't come in. It can't be for any other thing from working this ride-housing job. Like a lot of these guys, they take the weekend off to see if they're better, and on Monday he reports that he's hit serious. Now, he reports it to somebody who he can't remember the name because it's a general contractor, but we know that he does it because he's referred to the company clinic, which he goes to the following day, which is a Tuesday, and when he goes to the company clinic on Tuesday, which is the 19th of May, it says here, this is a result of a repetitive activity. Patient states he repeatedly was walking on uneven terrain when his right hip and lower back started causing him pain. This is not related to a specific injury. The pain is located in the low back bilateral. In his mind, an injury is something that you take a day off work for. It's something that you file an accident report for. We know he went to this chiropractor because of his low back pain, but again, if you look at the chart notes of the 10 or 12 visits, never once does he mention that it's from work because he says, listen, I need an adjustment so I can go back to work the next day. He never takes a day off work. He's never had a prior worker's comp injury. It's true that when he goes to the consultant or chiropractor, he says, symptoms began, again, it must be an accident or trauma. False. Symptoms came on slowly. True. Symptoms came on slowly following a job or an accident. It says, F, false. But then you have the history, which he actually gives the doctor that same day. The patient is a 35-year-old iron worker who began to experience low back pain about six weeks ago. His low back pain is related to strenuous activity, not a job. As an iron worker, blood loss from pain became progressively severe. He repeated trauma at work, prompting him to visit a concentratory treatment clinic. Now, how can you say that this man never, doesn't have any type of opinion in the record that his job is related to that? The only thing that they were reporting was the history he gave them. Your Honor, except that, when he talks about his history, he's referring to the body such as here. It says, patient reports of no specific incident that increased his symptoms. Okay? But when we talk about the actual diagnosis... Counsel, there's no doctor's diagnosis in here. There's a doctor's diagnosis of no causal connection. That's same. Can you tell me something? Yeah. Commission didn't think much of the credibility of your client, did they? For a couple of reasons. When he went to Concertia on May the 19th, he denied any previous injuries to his lower back. He'd been treated by pain for years. And when he goes to Atkinson, he was asked, have you ever had problems with any part of your back before? He answers, no. But again, Your Honor, again, he doesn't look at these as disabling injuries. He's never taken a day off work because of his low back condition doing this kind of work. And as far as Dr. Singh is concerned, I shared this video with the defense prior to the trial in the hope that having their doctor look at it would perhaps change his opinion. Because the mechanism of injury that he bases his opinions on is the task of standing on an uneven surface is not a plausible mechanism for causing an aggravation of an underlying degenerative condition. His understanding of the mechanism of injury is standing on an uneven ground. I agree with this, but that's not a mechanism of injury. Carrying 135-pound rods repetitively on a daily basis. No, he wasn't doing that all day, was he? Yes, sir. I thought he became a supervisor, and the record reflected 60 percent of the time he was not carrying it, he was a supervisor. Is that true? Your Honor, he's a working, he's what they call a working foreman. They get paid a buck more an hour. But that was his boss who said that 60 percent of his day is studying blueprints. These guys don't study blueprints. These guys are pumping iron all day. Well, how do we know that? That's the orders of the record. We have to go on the testimony of the record, don't we? And he testified that that was not the case. Okay? So I asked him about that in his direct examination. I gave that tape to them in the hope that it would show. So is the commission able to say, we believe the superintendent is not the working foreman? Of course, that's the promise of the commission to weigh the credibility of all witnesses. But if you look at that video, you will see the type of work and how it's performed, and all of the witnesses, including the superintendent of the company, agree that that is substantially the way the work is performed. If you believe, if you watch that tape, you see that a person has been injured in their back doing this type of thing. We should find as a matter of law that every iron worker that does this work injures his back. Well, sir, I think it's sometimes evidence that's so overwhelming. Well, should I write an opinion that says that? No, sir. But in this particular case, given the circumstances that he reported low back pain immediately, that he hadn't seen any doctor for his low back in eight and a half months, that he had no scheduled visits with a chiropractor at the time this occurred, he had worked for this company for about six months and had no days off because of low back pain. Then, yes, sir, I think if you put everything into context, you can be able to believe that this is where his injury came from. So why, again, did he deny ever having any prior back problems? Isn't that a little troubling? Well, in this setting, I would agree with you it is, but he explained it, and I believe him in the sense that what he says is an injury or an accident is something that I have to take a day off and look for. It's something where I have to report it as a workplace accident. Well, one of the things that he stated, though, and I think for me it was problematic, and I think for the commissioners, your credibility is the linchpin of the credibility, is the question wasn't, were you injured, had you suffered an injury, did it work? It was, have you ever had back problems? And he said no, and he's had six years of treatment and no back problems. So the only thing I would say to this, sir, is that it was intermittent, and, again, it was an intermittent answer, no, to the question, have you ever had back problems? You can see where the commission finds out that he had six years of treatment for back problems after an injury in that fashion and questions credibility in terms of that alone. I understand that that was a concern. What do we do with Singh's testimony that says, in his opinion, your client's complaints were non-anatomical in nature, his neurological and strength testing were normal, the MRI demonstrated age-appropriate findings, and his subjective complaints could not be objectively verified? Well, the short answer is he's wrong. Wait a minute, we don't get to make that decision, that's a commission, they said. Well, the only reason I say that, sir, is when Dr. Atkinson, his orthopedic surgeon, reviews the film, it says the MRI of the lower spine dated June 11, 2015, was reviewed and shows findings suggestive of central to left-sided disc herniation of delphitis 1. So the thing is, Dr. Singh can say it's non-anatomical, but there's an MRI that shows that the guy's had an early... Well, Dr. Singh commented on the MRI, he said it demonstrated only age-appropriate findings. That's all it demonstrated. And he also said that the mechanism of injury is standing, not humping 125-ton rods on your back on a repetitive basis of obstruction. Counsel? Yes, sir. You'll have time in reply. Good morning, Your Honor. My name is Victor Coromante, Derek's former representative. I'm here today to discuss two issues. The first was whether the commission's decision that a plaintiff did not sustain a work-related injury on May 14, 2015 is against the manifest way of the evidence. The second issue is whether the commission's decision that there did not exist a causal relationship between the alleged accident and the plaintiff's subsequent medical condition is against the manifest way of the evidence. I submit to you that there is overwhelming evidence to support the commission's decision on both of those issues, and I respectfully request that you affirm their decision. Before I discuss the evidence that supports the commission's decision, I'd like to take a minute to address the central theme of the plaintiff's argument to this Court. That central theme is that the arbitrator and three commissioners of the commission did not view Petitioner's Exhibit No. 6 as DVD. Mr. Stern, you don't have to go there. The cases are clear. It's presumed that they looked at the evidence. It's presumed, Your Honor, that they reviewed that and made this allegation without any support whatsoever. And I have to pay respect to you, Mr. Judge Hoffman, but I want to say one thing about this. We live in a world where facts mean nothing. People can say and do whatever they want, except for here, except for in court, except for under our American jurisprudence system, facts still mean something. So go to the facts that support the commission's decision. I will. Thank you. Addressing the issue of accident, the Petitioner's plaintiff's entire case rests upon his credibility. If you take away his testimony, if you take away his credibility, there is absolutely nothing to support his statement of accident on May 14, 2015. And I think this Court, if you're questioning Commissioner Naraki, pointed out those issues which the commission relied upon to find. The obvious one, he denied any prior problems to his back. The obvious one, that he denied any previous problems to his back. That's the most obvious one, Your Honor. There's others. With respect to that Petitioner, Your Honor, the arbitrator, who had the opportunity to sit and listen to the testimony, stated in her decision, when reviewing the injuries provided by the plaintiff to the physician at Concentra and Dr. Atkinson, it is clear to this arbitrator that the plaintiff attempted to mislead these physicians by indicating to them that he had no prior back problems. Not only did it afford him that he had no prior back problems with his low back that had been there before May 14, 2015. The evidence introduced at trial establishes that this is a false statement. The plaintiff had been under medical care for his low back for a significant amount of time before the alleged accident. Consequently, based on the evidence, the arbitrator finds the plaintiff's testimony lacks credibility. Justice Hoffman correctly pointed out that this claimant had been under medical care for a back problem for six years before the day of the accident. He testified that when he showed up for work on May 14, 2015, the day of the alleged accident, his back was sore. He admitted that he was trained to put his employer on notice of a work-related injury he has. So what does he do after the day of the alleged accident? Does he go into trial and tell his supervisor, I hurt my back today, or I tweaked it more than I normally would? The answer is no. He doesn't. He leaves the job site, drives home, gets no medical care. The next day is a Friday. The next day, what does he do? Calls his supervisor. Tells him, my back is hurt. My back hurts. I'm not doing it. He admits that during this conversation, he didn't say to his employer, I hurt my back on work the day before. I had a work accident. He admits it. What does he do that same day, May 15, 2015, the day after the alleged accident? He goes to see Dr. Pine. The same doctor he'd seen for six years for back problems. Dr. Pine gives him the same exact medical care that he gave to him before. He makes no mention to Dr. Pine on May 15, 2015, the day after the alleged accident, that he hurts his back at work. The commission calls it inconceivable, and I submit it's common sense that it is inconceivable, that if you've had an accident at work and you hurt your back and you go seek medical care the next day, that you don't mention it to that doctor. So how does he describe the accident on that day? He makes no mention of it whatsoever. No mention of an accident whatsoever. He goes in and says it's the same complaints that he had articulated for the preceding six years. It's the same exact treatment that he had received for the preceding six years. I understand that. But my question is, is that when we're talking about this is an incident, an accident, that we're attempting to seek compensation for, am I correct? Correct. Okay. And so when does, and what is the nature of that activity that day that he associates with an accident? When he saw Dr. Pine on May 15, 2015, is that what you're referencing? No. Okay. I think opposing counsel is trying to characterize the six years of chiropractic treatment as something similar to some people go to a masseuse when they get a sore muscle, you know. That may be partially right. Okay. But we're reading a lot into the record that's not in the record. Number one. Number two, he's offered a condition to decide if he can draw the princess from that. And number three, that's the same treatment that he got on May 15. I would submit to you that it's something different, that I have an accident, I have an injury, and you don't say that from that injury. First, he didn't have an accident. He didn't have an injury. That's what happened on that day. When was the first time the employer knew the claimant was claiming an accident on that date certain? May 19, 2015. When he called it in and he said, I heard my back and they made me send him to the consensual. Yet when he went to the consensual, he didn't indicate to them that he had prior work. Rather, he said my back had been nagging me for weeks, nagging me for weeks. No mention of a work-related accident took him to the consensual. He then saw Dr. Atkinson, and he's asked point blank, did this condition in your back come on suddenly after a work-related accident? He said no. He also denied Dr. Atkinson any prior back problems. And so I think it's perfectly acceptable that the condition says, when you lie to your treating physicians, we're not going to find you a claimant. But in addition to the credibility problems, didn't Dr. Singh also opine that none of the claimant's employment activities either caused or aggravated the condition of the owner? That's totally a part or addition to the credibility issue. I think we've got to be careful to remember something. The commission didn't find that he didn't have an accident. What the commission found was he failed to prove it by a preponderance of the evidence after finding him totally incredible. That's what they found as the accident. They made a definitive finding as to causation based on Singh's opinion. They adopted Singh's opinion that this man simply did not suffer from anything that was work-related. Correct, Your Honor. Thank you for pointing it out. With respect to Dr. Singh's opinion and the issue of causation, there's only one physician in this case that expressly addressed the issue of causation, and that was Dr. Singh. Dr. Singh is a board-centered cardiothoracic surgeon who specializes in the care of patients with spinal injuries. He's got impeccable credentials. He examined the patient. He viewed a DVD of the worksite. He viewed pictures of the worksite. He viewed the MRI of the lumbar spine. And as Justice Hoffman correctly pointed out, after he did all of that, that's when he said, in my opinion, his employment activities were not the cause of his back condition, and in my opinion, he hasn't suffered an acute injury to his back. And what did he base that on? What did he base that on? Plaintiff's complaints were not anatomical in nature. His clinical examination was essentially normal. And the MRI demonstrated age-appropriate findings. Thus, I cannot objectively verify his subjective complaints. That's the basis of Dr. Singh's opinion. And I ask this court, where is that analysis from Dr. Pine? It doesn't exist. Where is that analysis from the physician, Dr. Zinker? It doesn't exist. Where is that analysis from Dr. Evans? It doesn't exist. As Justice Hoffman correctly pointed out, in the counsel's brief, he argues to this court that those physicians at Concentra and Dr. Atkinson opine that there existed a causal relationship between the accident and the condition in the petitioner's lumbar spine. That's false. What he cites to you is the history in those documents. Those are the plaintiff's words to the documents. Those aren't the doctor's opinions. In fact, most probably, as you look at Dr. Atkinson's report, this is C33-66 and 67 of the record, that statement that's cited in that brief, I think it's page 33, is taken right from the history section. And right below that, it says he, meaning the patient, believes his condition is related to walking halfway. Then we fast forward to the section where the doctor says what his opinion, called diagnosis in his report, and I want to read it. Patient's low back diagnosis is displaced lumbar disc. The differential diagnosis includes mechanical versus discogenic pain. Additional diagnostic possibilities include infection and neoplasm. That's not an opinion on causation. That's just the opposite. The doctor had yet to write an opinion on causation. One last issue on this. The parts that they cite in their brief, the standards that doctors opine and can center in Dr. Atkinson on causation, are in the part of the report that's before the doctor's even examined the plaintiff and reviewed any diagnostic test. No competent physician is going to write an opinion on causation before he does an examination, before he looks at the diagnostic test. At the end of the day, the commission's decision that the claimant failed to establish by a preponderance of evidence that he sustained a work-related injury on May 14, 2015, is supported by the overwhelming evidence. At the end of the day, the commission's decision to adopt Dr. Singh's opinion on the issue of causation, it's within their prerogative to do so. I don't need to remind this court that it's not your function to reweigh the evidence and substitute your judgment to that of the commission. That decision, in and of itself, supports the finding that there does not exist a causal relationship between the condition, the condition of our spine, and the alleged accident. I thank you for your time. Thank you, counsel. Counsel, you may proceed to reply. The defense and all their arguments really don't address the repetitive trauma theory in this case because I filed two different applications, one alleging a discreet injury, one repetitive trauma. As you are aware, there are repetitive trauma, oftentimes the symptoms become insidious. That's what the medical records in this particular case show. We know that what he does is he works with his back. Anybody who's a rockbuster works to his back. He tells his employer the next day that his back is hurting him. It's kind of like the notice case that I heard Mr. McElrust talk about, the carpenter who crawls on his knees all day and just reports to me my knees are bothering me. Where else is he going to come from? This is what upsets me perhaps most about the case. First of all, Dr. Singh's understanding of the mechanism of injury is wrong. The mechanism of injury is shown in the tape that we have introduced into evidence here. Even the superintendent says this is what these guys do. I gave a copy of that tape to them in the hope that they would show it to Dr. Singh. They knew it was dynamite because if you read the record of trauma, you will see 12 complete pages of objections to that tape coming into evidence, continuing objections, individual objections, because they knew what that tape would do to their case. Do they show that tape to their doctor and say this is what this man does for a living? No. They shoot some other tape that they don't introduce into evidence, even though they know this one is coming in. So did you argue before the commission that Dr. Singh's opinion was flawed because of a lack of proper foundation? Yes, sir, I did. I did do that. And I will see how if you look at that tape and you look at that Dr. Singh opinion on causation, it has nothing to do with what that man does for a living. Well, wait a minute. Hold on. Singh didn't base his opinion based upon mechanism of injury. Singh examined the MRI. Singh found, as I see it, that your client's employment activities as an iron worker didn't cause or aggravate his medical condition. And Singh, contrary to Atkinson, Singh found he was capable of full employment without restriction. He didn't believe this guy was hurt at all. Well, as I said, your Honor, the MRI disclosed that the man had a herniated disc. Singh says no. Singh says it only demonstrates age-appropriate findings. That's what he said. And he has no understanding of what this man does for a living. Wait a minute. Hold on. Whether you have a herniated disc or you don't have a herniated disc has nothing to do with what you do for a living. Either you have that medical condition or you don't. Atkinson said he had it. Singh says he didn't. Well, Your Honor, what I would suggest to you is this. We know that he didn't have a herniated disc before the 14th Amendment. And that's because there is no man on this earth who could perform that type of work with a herniated disc in his low back. Thank you very much. Thank you, counsel. This matter will be taken under advisement and a written disposition shall issue.